United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br>IHASSAN F. DAHLEH,<br>                              Debtor. | Bankruptcy No. 15 BK 04203<br>Chapter 7<br>Adversary No. 16 AP 00136 – Count II |
| GHAZI MUSTAFA and ANNA MUSTAFA<br>                              Plaintiffs<br>v.<br>IHASSAN F. DAHLEH,<br>                              Defendant. | Honorable Jack B. Schmetterer |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFFS' ADVERSARY COMPLAINT OBJECTING TO DISCHARGE (COUNT II)**

## INTRODUCTION

Defendant Ihassan F. Dahleh ("Defendant") filed his Chapter 7 bankruptcy case on February 9, 2015. This adversary proceeding, brought by Plaintiffs Anna Mustafa and Ghazi Mustafa ("Plaintiffs"), was filed on February 25, 2016. The Complaint is pleaded in two counts.

Count I alleges that Defendant made false representations, obtained money from plaintiffs by false pretenses, and committed actual fraud within the definition of 11 U.S.C. § 523(a)(2). Count I seeks to determine the nondischargeability as to Defendant's obligation.

Count II alleges that Defendant (a) acted with intent to hinder, delay or defraud Plaintiffs by concealing, transferring or removing property pursuant to 11 U.S.C.

§ 727(a)(2), (b) failed to keep or preserve adequate records such that his financial condition might be ascertained pursuant to 11 U.S.C. § 727(a)(3), and (c) failed to satisfactorily explain the loss or deficiency of assets of the estate pursuant to 11 U.S.C. § 727(a)(5).

On May 10, 2016 a Final Pre-Trial Order was entered severing Count II of the adversary complaint for trial.[1] Count II of this adversary complaint was tried over eight afternoons in February and March of 2017. Post-trial, an Order was entered requiring Plaintiffs and Defendant to submit proposed Findings of Fact and Conclusions of Law in lieu of final oral argument. Those written arguments have now been filed, and the proceeding is ready for decision.

The parties dispute a number of matters. Plaintiffs allege that Defendant concealed or transferred his interest in assets of the estate, including bank accounts at TCF Bank, PNC Bank and BMO Harris Bank, a Rolex wrist watch which was allegedly transferred to Liquor Station, Inc., one of the Defendant's businesses, and the

---

[1] The Order also consolidated Count II of the instant proceeding with Count I of the adversary complaint in a related proceeding, Marcus Mustafa v. Ihassan F. Dahleh, 16 AP 00137. Count I of the related adversary alleged that Defendant had (a) acted with intent to hinder, delay or defraud Marcus Mustafa by failing to satisfactorily explain the transfer of estate property within one year prior to the filing of bankruptcy, (b) failed to satisfactorily explain the transfer of certain property after the date of the filing of his voluntary petition, specifically with regards to any transfer of interest in Liquor Station, Inc., and (c) failed to keep adequate records such that his financial condition could be ascertained. Although Count I of the related adversary was consolidated with Count II of the instant adversary, on Plaintiff Marc Mustafa's Motion for Voluntary Dismissal and Defendant Ihassan F. Dahleh's Motion for Dismissal with Prejudice, Counts I and II of Adversary No. 16 AP 00137 were dismissed on February 3, 2017. That order dismissed the related adversary, in its entirety, with prejudice, leaving only Count II of the instant adversary proceeding remaining for trial.

2

Defendant's ownership interest in a dental clinic known as 40/30 Dental, Inc. Defendant denies these allegations, asserting that he did disclose each of these assets as he remembered them and as they became relevant. In particular, Defendant asserts that Liquor Station, Inc., not the Defendant, has always been the true owner of the Rolex wrist watch.

Plaintiffs further allege that Defendant was, at the time of filing for bankruptcy, the 100% owner of Liquor Station, Inc. Defendant asserts that his brother, Gus Dahleh, provided most capital for that business, and thus, owned 95% of Liquor Station, Inc.

Plaintiffs have also attacked Defendant's allegedly inadequate record keeping as a contributing factor to the difficulty of determining who owns Liquor Station, Inc. Specifically, Plaintiffs rely on proof that that Defendant informed state and local governmental agencies that he owned 100% of Liquor Station, Inc. Defendant has asserted that he has kept adequate records to ascertain his financial condition, pointing to tax filings by him which he claims proves that he never asserted that he owned 100% of Liquor Station, Inc..

Plaintiffs also asserted that Defendant knowingly and fraudulently made false oaths, both in his schedules and at trial, specifically in connection with the omission and failure to amend his schedules for the bank accounts and dental clinic, and his ownership of the Rolex wrist watch. Defendant contends that Plaintiffs have not

produced any evidence that proves Defendant's omissions were anything but harmless, and that no statements made by Defendant evinced fraudulent intent.

Finally, Plaintiffs allege that Defendant has failed to explain satisfactorily the loss of several assets of the estate, specifically the money drawn on one of the bank accounts, the failure to schedule his interest in 40/30 Dental, Inc., and the forfeiture of the Rolex wrist watch. Defendant argues that the bank accounts were de minimis assets, that he did not need to schedule his interest in 40/30 Dental, Inc. because the business was worthless and going through its own bankruptcy, and that he never owned the wrist watch despite acknowledgements of ownership each time the watch was pawned.

Each of the foregoing factual issues is explained below in greater detail.

Post-trial submissions of the parties emphasize two issues that the parties seek to resolve. First, Plaintiffs seek a determination of Defendant's ownership interest in Liquor Station, Inc. Defendant contends that his undisputed 5% interest (that was sold post-trial with approval of this Court) was his only interest in the business, while Plaintiffs argue that Defendant owned an undisclosed 100% of the business at the time he filed for bankruptcy.

Second, Plaintiffs object to Defendant's discharge pursuant to several provisions of 11 U.S.C. § 727(a), including Defendant's asserted intent to hinder, delay or defraud Plaintiffs, his failure to keep adequate records, his knowing and fraudulent oaths, and his failure to adequately explain the loss of estate assets. Defendant denies that he acted

4

fraudulently, and argues that his records and explanations are satisfactory to explain both his financial condition and the disappearance or omission of any estate assets.

For reasons stated below, it is held that: (1) Defendant owned and did not transfer to his brother, Gus Dahleh, 95% of his ownership interest in Liquor Station, Inc. and (2) pursuant to 11 U.S.C. § 727, Defendant (a) concealed, transferred or removed property of the estate, including the Rolex watch, with an intent to hinder delay, or defraud the Plaintiffs and other creditors, (b) failed to keep records in a form adequate to ascertain his financial condition, (c) knowingly and fraudulently made false oaths or accounts, and (d) failed to explain satisfactorily the loss of estate assets. As a result of each of these violations, Defendant's discharge will be denied by separate Order.

The Court now makes and enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Defendant is an individual who, in 2003, founded a mortgage brokerage known as Mortgage Direct, Inc. Mortgage Direct, Inc. became a prosperous company, employing over 100 individuals in offices in California, Florida, Texas and the Chicago area. The majority of Defendant's obligations in bankruptcy stem from business loans made to Mortgage Direct, Inc. and his personal guarantees of those loans. Defendant filed his petition for Chapter 7 bankruptcy relief on February 9, 2015. Defendant's

Schedule F scheduled Plaintiffs as unsecured creditors with a $475,000.00 claim. Their claim was not listed as contingent, liquated or disputed.

Many of the misrepresentations alleged by Plaintiffs stem from the Defendant's schedules. Among the omissions asserted, Debtor omitted or misrepresented his ownership interest in bank accounts at PNC Bank, Harris Bank and TCF Bank, as well as his ownership interest in a Rolex wrist watch, in a dentist's office known as 40/30 Dental, Inc., and in a liquor store known as Liquor Station, Inc. Details as to each of those alleged omissions or misrepresentations are addressed below.

### A. Defendant Omitted His Ownership Interest in Bank Accounts at PNC Bank, BMO Harris Bank, and TCF Bank

Defendant's schedules omitted his ownership of funds in three personal checking accounts, namely checking accounts at PNC Bank, BMO Harris Bank, and TCF Bank. Each of those accounts held between $50 and $200. In his Schedules, Defendant listed only one of these accounts: the account at PNC Bank. Defendant, in his trial testimony, stated that he was not aware of having accounts at BMO Harris or TCF Bank, let alone whether those accounts were still active. However, Defendant also stated at trial that he became aware of the BMO Harris and TCF Bank accounts shortly after he filed his bankruptcy case.

Instead of amending his schedules to reflect the discovery of these accounts, however, Defendant admits that he made deposits into the Harris account after his bankruptcy was filed. When asked about where the money in the account went,

6

Defendant states that the money was self-consumed by a $10 per month maintenance fee levied by the bank. Instead of amending his schedules to reflect the existence of the account and allowing the Trustee to determine how the money should be administered, Defendant admits that he deposited $120 on July 16, 2014 and $50 on July 6, 2015, allowing the fees to run down the balance on the account. Moreover, when asked about the TCF account at trial, Defendant initially denied that such an account existed. However, in February 2015 Defendant wrote at least two checks totaling $6,175.00 from the TCF account and deposited that money into a PNC account for Liquor Station, Inc. One check was written the week before Defendant filed his bankruptcy case and the other came two weeks post-petition.

Even if it is believed that Defendant simply forgot about these accounts when he filed his bankruptcy case, once he discovered them, he did nothing to remedy the omissions. Defendant's assertion that Plaintiffs "judicially admitted" that he revealed these assets under oath at his 341 meeting of creditors or during a Rule 2004 examination is inadequate because the bankruptcy code requires a debtor to amend his schedules when new assets are found. Furthermore, he issued checks from these accounts without allowing the trustee to consider whether to administer the money on deposit. Defendant thereby violated his continuing obligation to inform the bankruptcy Trustee of newly discovered assets. In fact, Defendant has not denied that he made the foregoing transfers, both before and shortly after filing his bankruptcy case. Nor has he

7

provided any explanation as to why he did not comply with his ongoing obligation to amend his schedules to reflect discovery of assets which rightfully belonged to the bankruptcy estate.

**B. Defendant Omitted and Misrepresented his Ownership Interest in a Rolex Wrist Watch**

The Defendant has also repeatedly misrepresented his ownership interest in a Rolex wrist watch worth more than $30,000.00. Defendant repeatedly pawned and redeemed that watch at New York Jewelers, a jewelry store located on Wabash Avenue in Chicago, Illinois. Each time Defendant pawned that watch, he signed an agreement with New York Jewelers stating that the watch was solely his property:

> "The Pledgor hereby represents and warrants that the personal property described on the reverse side hereof is the property of the Pledgor and the Pledgor alone, and is not subject to any claims of ownership, possession or interest by any other person or entity."

(Pl's. Trial Ex. 50).

When Defendant filed his bankruptcy case, the watch was in possession of New York Jewelers, though Defendant did not indicate on his schedules that New York Jewelers was a secured creditor and never amended his schedules to reflect that. Defendant also failed to disclose the watch as personal property in his schedules. Defendant indicated at the 341 meeting of creditors that he did not own any jewelry worth more than $2,500. Defendant also failed to list the monthly interest payments made to New York Jewelers on his statement of financial affairs.

8

Two days after the bankruptcy was filed, on February 11th, 2015, Defendant's father redeemed the watch from New York Jewelers. Shortly thereafter, on March 3, 2015, Defendant again pawned the watch to New York Jewelers, well after filing his bankruptcy petition, again representing that he was the owner. Following the last pawn on March 3, 2015 during the bankruptcy case, ultimately forfeited the watch to New York Jewelers.

While Defendant repeatedly asserted at trial that Liquor Station, Inc. owned the watch and that he was not owner of the watch, he has never produced any written agreement documenting any transfer of ownership to Liquor Station, Inc. Nor did the Defendant indicate in his statement of financial affairs that he transferred the watch either absolutely or as security within two years preceding his bankruptcy. Furthermore, the Defendant never informed New York Jewelers that the watch ownership had been transferred to the liquor store entity.

Defendant contends that Plaintiff has not produced any proof as to the Defendant's ownership interest in the watch, pointing to the testimony from the owner of New York Jewelers, Steve Rubenstein, that the pawn tickets were never meant to be an accurate reflection of ownership and that employees of New York Jeweler never ask customers as to the true ownership of pawned items:

> Q: At the time that Fayez Dahleh picked up the watch on February 11th, did he tell you that he was now the owner of the watch?
> A: That just isn't a discussion I have with clients period. I mean, I don't ask clients when they come in to do a loan is this your watch.

9

(Vol., 1, p. 138, lines 1-7)

However, Plaintiffs produced each of the pawn tickets which bear the Defendant's signature, and they provided powerful evidence. These pawn tickets each included language, which Defendant affirmed with his signature, stating expressly that Defendant personally owned the watch: "The Pledgor hereby represents and warrants that the personal property described on the reverse side hereof is the property of the Pledgor and the Pledgor alone." The pawn tickets thus clearly showed Defendant to be the sole owner of the Rolex wrist watch. Other than attacks as to the weight of this evidence, Defendant does not dispute that he repeatedly signed the tickets and that the tickets contain language, which Defendant had agreed to, that expressly confirmed that he was owner of the watch. Furthermore, Defendant has produced no evidence of any alleged transfer of the watch ownership to Liquor Station, Inc. The totality of the evidence showed that Plaintiffs have carried their burden with regards to ownership of the watch.

**C. Defendant Omitted his Prior Ownership Interest in 40/30 Dental, Inc.**

Defendant omitted from his statement of financial affairs the name, address and taxpayer identification number of a dental practice in which he had held a 40% ownership interest. Defendant held that ownership interest in 40/30 Dental, Inc. until January 2013, but never amended his schedules to reflect this. (Trial Testimony, Vol 9, 49 at ¶ 24-25.)

Defendant asserts that because he voluntarily disclosed the existence of this asset during the meeting of creditors, which took place on January 9, 2013, he had no further duty to disclose the transfer of this asset on his schedules. He is clearly incorrect on this point, as the bankruptcy code imposes a continuing duty on debtors to update their schedules as assets are revealed. Defendant's assertion that no creditors could have benefited from 40/30 Dental, Inc. because it went through its own bankruptcy is irrelevant. It is for the Trustee to decide how to research and administer the totality of the estate, not for the debtor to decide. Regardless of an asset's value, Defendant had a duty to disclose it.

**D. Defendant Repeatedly Misrepresented his Ownership Interest in Liquor Station, Inc.**

Defendant repeatedly misrepresented his ownership interest in a liquor store in Cicero, Illinois known as Liquor Station, Inc. On his Schedule B, Defendant indicated that he held only a 5% ownership interest in Liquor Station. Defendant contends that when he filed his bankruptcy case, his brother, Gus Dahleh, owned the remaining 95% of Liquor Station. However, on each liquor license renewal application that Defendant filed with the Illinois Liquor Control Commission in 2012, 2013, and 2014, he stated expressly that he owned 100% of Liquor Station. (Pl's. Trial Ex. 5-12.) Defendant did not report to the Liquor Control Commission any alleged transfer of the 95% ownership interest in Liquor Station, Inc. until November 30, 2015, after he had already filed his bankruptcy case. (Pl's. Trial Ex. 13.) Likewise, Defendant did not report any such

11

transfer of interest to the Town of Cicero Liquor Commission until November 25, 2015, well after filing his bankruptcy petition. (Pl's. Trial Ex. 16.) The earlier admissions of ownership in documents filed with the State of Illinois and the Town of Cicero carry a great deal of weight. While Defendant asserts now that it was primarily his brother, Gus Dahleh, who capitalized Liquor Station, Inc. and thus owned 95% of the business, Defendant repeatedly asserted to the State of Illinois as well as the Town of Cicero that he was sole owner of the store. Furthermore, Defendant admitted in his trial testimony that he unilaterally decided as president of Liquor Station, Inc. that Gus Dahleh's contributions were worth a 95% ownership interest in the business, but did nothing to formalize or document this arrangement. (Trial Testimony, Volume 9, 63, ¶ 17-25.) When Defendant scheduled a $265,000.00 debt to Gus Dahleh, was that evidence of a transfer of interest, capitalization of Liquor Station, Inc. or simply debt accumulated on personal loans? But that seems unimportant considering Defendant admitted repeatedly that he owned 100% of Liquor Station, Inc.

Defendant purchased the liquor store from Shihada Mustafa in July of 2011 for $220,000.00, paying an initial $100,000.00 that day, an additional $100,000 on December 15, 2011. (Trial Testimony, Volume 13, 103-105.) The remaining $20,000.00 was paid in $5,000.00 installments over a four month period. (Trial Testimony, Volume 13, 105, ¶ 16-19.) Defendant's denial that he personally purchased substantially all of the assets of the liquor store run by Shihada Mustafa, rather than through Liquor Station, Inc., is

meritless. While the asset purchase agreement indicates that Defendant signed as president of Liquor Station, Inc., Defendant's personal financial and business records are such that it is extremely difficult to ascertain relevant information. In his tax returns, Defendant claims to be only a 5% owner of Liquor Station, Inc. His filings with the Illinois Liquor Control Commission directly contradict this assertion, indicating that Defendant owned 100% of Liquor Station, Inc. Thus, Defendant's records do nothing to clear up the issue of ownership.

Whether Defendant acted as president of Liquor Station, Inc. with a 5% ownership interest or a 100% ownership interest is not a critical issue: Defendant ran the liquor business day-to-day and his unsupported denial that he purchased the assets of Shihada Mustafa through his company, Liquor Station, Inc., is contrary to the asset purchase agreement, which was structured as an asset sale. (Pl's. Trial Ex. 42.) Defendant purports to have run Liquor Station, Inc. as an independent business, but his odd business practices, including pawning a wrist watch to raise capital, making deposits, paying bills, and receiving disbursements from companies owned by his father and brother, all confuse what actually happened. While controlling the cash flow, Defendant denied personal involvement or controlling interest. Doing much of the liquor business in cash led to a situation where the Defendant's personal financial records, as well as the records of Liquor Station, Inc., are for all practical purposes, quite confusing.

Defendant further affirmed to Shihada Mustafa, in discussions regarding sales tax liabilities, that he was the owner of Liquor Station, Inc. (Trial Testimony, Volume 13, 177-79.) Defendant's personal income tax filings and Liquor Station's corporate income tax filings for 2011, 2012 and 2013 reported that Defendant owned only the 5% interest he now alleges he holds in Liquor Station, Inc. (Def's. Trial Ex. 4.) However, the weight of evidence suggests otherwise. Defendant filed all three of the foregoing tax returns on September 23, 2014. Defendant has asserted that his late filings had nothing to do with protecting his interest in Liquor Station, Inc., stating that the business was not operating in late 2011 or early 2012. Defendant provides no explanation as to why the 2013 tax returns were filed late. Those returns all reported that Defendant owned only 5% of Liquor Station, Inc. Defendant states that he submitted these tax returns to the Liquor Control Commission alongside the liquor license renewal forms indicating his 100% ownership interest in Liquor Station, Inc. The admissions of the Defendant to the State of Illinois and the Town of Cicero are otherwise unexplained. Defendant has provided no explanation as to why he would represent himself to state governmental agencies to be the true 100% owner of Liquor Station, Inc. if that were not the case. As such, the evidence points to the conclusion that Defendant owned a far greater stake in Liquor Station, Inc. than he listed on his bankruptcy schedules.

Defendant is correct on one point: he does not currently own 100% of Liquor Station, Inc. On September 15, 2016, this Court entered an order allowing the Chapter 7

Trustee to sell Defendant's undisputed 5% interest in Liquor Station, Inc. pursuant to 11 U.S.C. § 363 for $50,000.00 to his brother Gus Dahleh. However, as discussed below, the remaining 95% interest belongs to Defendant, and his repeated but uncorroborated assertion that a transfer to Gus Dahleh took place at some point is nothing more than an attempt to mask his ownership of Liquor Station, Inc.

### E. Defendant's Disorganized Record Keeping Practices are a Violation of 11 U.S.C. § 727

In addition to the omissions and misrepresentations that Defendant has made on his schedules in this case, Defendant has also run his business in such a way as to make it virtually impossible to discern what he has done with his cash flow over the last several years. Defendant has regularly done business in cash, made deposits, paid bills and received deposits from businesses owned by his father, and has allowed his brother to use his accounts to speculatively purchase futures and options, which has resulted in large losses. Defendant's strange record keeping has made it most difficult to quantify accurately his annual income.

### Conclusion

Defendant's numerous omissions and misrepresentations, coupled with his disorganized record keeping constitute compelling evidence of violations of 11 U.S.C. § 727(a)(2), (a)(3), (a)(4) and (a)(5), such that a denial of discharge is warranted.